CLARK & NUNNALLY *vs.* CUMMING & COMPANY.

A broker is a special agent, and derives his power and authority to bind his principal from the instructions given to him by the latter. When definite instructions are given by the principal to the broker to sell goods for him at a specified price for a certain time and day only, this will not authorize the broker to contract and sell

the same kind of goods for his principal at a different and subsequent time for the same price. His power is limited by and ceases with his instructions; and this is true, even though it had been usual, in the course of dealings between the broker and his principal, for the broker to continue to sell at the prices last quoted by the principal.

March 23, 1886.

Principal and Agent. Brokers. Contracts. Before Judge Hammond. Fulton Superior Court. September Term, 1885.

Preston Cumming & Company brought an action of complaint on an open account against Clark & Nunnally to recover $291.30, alleged to be a balance due them on a sale of peanuts by the defendants. The latter pleaded the general issue and set-off, alleging that, on January 6, 1883, they had made a contract with the plaintiffs for the purchase of certain peanuts; that the plaintiffs failed and refused to comply with the contract; that peanuts rose in price, and that the defendants were thereby damaged an amount equal to the demand of the plaintiffs against them.

On the trial, the evidence showed, in brief, as follows: Jones & Northen acted as brokers in Atlanta, Georgia, for the plaintiffs, whose place of business was in Wilmington, North Carolina. On May 24, they sent to these brokers a card containing quotations, and having printed on it "quotations for this day only; prices subject to fluctuations of market." This card quoted the price of peanuts at five cents per pound. The brokers received no other quotations, and on June 6 they agreed to sell defendants one hundred sacks of peanuts at five cents per pound, and gave them a written statement to that effect. They then telegraphed to the plaintiffs, who, being out of stock and knowing that the price of peanuts was rising—being five and three-fourths cents per pound—refused to accept the order. On June 14 they telegraphed to the brokers, instructing them to sell other peanuts at seven and one-half cents per pound. They sold a lot to defendants at that

price; the latter deducted the damages claimed by them for the refusal to make the former shipment, and paid the balance.    The price had risen, gradually, from June 6th to 14th, when it reached the point named. One of the brokers testified that it was the custom among brokers in Atlanta to sell at quotations furnished them until other quotations were received, and that this was the course of dealing between his firm and the plaintiffs; also that his firm had no authority to sell peanuts for the plaintiffs, except as contained in the written instructions of May 24.    Another broker gave testimony conflicting with this as to the custom.

The jury found for the plaintiffs the amount sued for. The defendants moved for a new trial, on the ground that the verdict was contrary to law and the evidence, and because the court charged as follows: "If the evidence shows that, at the time the sale was made by Jones & Northen, as brokers for the plaintiffs, they were acting under and in pursuance of quotations from plaintiffs as to price of peanuts, and such quotations authorized Jones & Northen to sell at a certain price, and for the day only on which the quotations were dated, then Jones & Northen would have had authority to sell at that price only on the day fixed by the quotation; and if they sold peanuts at that price on any other day except that on which the quotation was made, the sale would be void for want of power in Jones & Northen to make it, and it would be your duty to disregard the set-off of defendants and find for the plaintiffs the full amount sued for, with interest, if the claim of plaintiffs is otherwise made out by proof.

"If it should appear by the evidence in the case that, at the time of this alleged sale, there was a custom of the trade governing brokers, by which brokers sold peanuts, and continued to sell on quotations last named by their principals until new quotations or prices should be furnished by their principals, that custom would furnish no authority for Jones & Northen to sell defendants the one

hundred sacks of peanuts at the time alleged in the plea, if, in point of fact, the quotations under which the sale purports to have been made were quotations previously furnished to them by plaintiffs, and if such quotations stated on their face that they were made for the day of their date only, if such is the proof, Jones & Northen would only have power to sell at the price and on the day named in the quotation, and the custom, if any such existed, would have nothing to do with it. If there were no such limitations on the written quotations as to the time at which they could make the sale, then you can consider the custom, if any such is shown by the proof, and if the custom was that the broker had power to sell until new quotations were made, then Jones & Northen would have the power to make the sale, and the defendants' plea of set-off would be good if otherwise sustained by the proof. How all the facts are, the jury must determine from the evidence."

The motion was overruled, and defendants excepted.

ABBOTT & GRAY, for plaintiffs in error.

A. E. CALHOUN, for defendants.

BLANDFORD, Justice.

The main and only question in this case is, whether a broker can bind his principal by a contract made against the express instructions and authority of the principal.

This court holds that he cannot bind his principal under the case put.

A broker is a special agent, and derives his power and authority to bind his principal from the instruction given to him by his principal. Code, §§2194, 2196, 2184; Story on Agency, page 32; 1 Esp., 111, 113; 32 Md., 169; 60 Ill., 237. When definite instructions are given by the principal to the broker to sell goods for him at a certain specified price for a certain time and day only, this will not

authorize the broker to contract and sell the same kind of goods for his principal at a different and subsequent time for the same price; his power is limited by and ceases with his instructions, and this is so, even though it had been usual in the course of dealings between the broker and his principal for the broker to continue to sell at the prices quoted last by the principal. 32 Md., 179, 180.

The court below decided as we have here held, and the judgment is affirmed.